**United States District Court**
**Northern District of Indiana**
**Hammond Division**

| | | |
|---|---|---|
| CARLOTTA BLAKE-KING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:13-CV-91  JVB |
| | ) | |
| THOMAS M. McDERMOTT, JR., | ) | |
| individually and as the Mayor of City of | ) | |
| Hammond, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION**

Plaintiff Carlotta Blake-King has sued Defendant Thomas McDermott, mayor of the City

of Hammond, and five other defendants, alleging in her second amended complaint (hereinafter

"complaint") that they were conspired to terminate her position as executive director of United

Neighborhoods Inc. ("UNI"), an Indiana not-for-profit corporation, because of her exercise of

her First Amendment rights in violation of 42 U.S.C. § 1983. She also alleges two state law

claims against McDermott (and four of the other defendants): tortious interference with a

contractual relationship and tortious interference with a business relationship. McDermott has

filed a motion to dismiss the claims against him individually pursuant to Federal Rule of Civil

Procedure 12(b)(6) for failure to state a claim (DE 35).

**A.     Standard for Evaluating a Motion to Dismiss**

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim is

to test the sufficiency of the pleading, not to decide the merits of the case. *See Gibson v. Chi.*,

910 F.2d 1510, 1520 (7th Cir. 1990). Rule 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." However, "recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).[1] As the Supreme Court has stated, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* Rather, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570). A complaint is facially plausible if a court can reasonably infer from factual content in the pleading that the defendant is liable for the alleged wrongdoing. *Id.* (citing *Twombly*, 550 U.S. at 556). The Seventh Circuit has synthesized the standard into three requirements. *See Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). "First, a plaintiff must provide notice to defendants of her claims. Second, courts must accept a plaintiff's factual allegations as true, but some factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim. Third, in considering the plaintiff's factual allegations, courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id.*

---

[1]   In *Twombly* the Supreme Court "retooled federal pleading standards, retiring the oft-quoted [*Conley v. Gibson*, 355 U.S. 42, 47 (1957)] formulation that a pleading 'should not be dismissed for failure to state a claim unless it appears beyond doubt that the [pleader] can prove no set of facts in support of his claim which would entitle him to relief.'" *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618, (7th Cir. 2007).

**B.**     **Facts**

According to Plaintiff's complaint, she was hired as executive director of UNI in February 2005. Defendant McDermott told her about the position and recommended her to UNI's board of Directors.

Five years later, in October 2010, she announced her candidacy for the Hammond Third District city council seat against the incumbent, Defendant Anthony Higgs. McDermott was angry with her because he was supporting Higgs and also wanted her help with his mayoral reelection campaign. In February 2011, McDermott held a campaign meeting with most of the city departments heads and party captains. At the meeting, McDermott stated that he had gotten Plaintiff her job at UNI and that by running for city council she would not be able to adequately help and support his campaign. He announced he was upset with her and didn't care who knew it.

At a city council meeting on February 14, 2011, Higgs moved for a letter to be sent to UNI questioning the legality of Plaintiff running for public office while serving as the director of a not for profit agency. Higgs sent a letter to Plaintiff and various members of UNI's board of directors dated February 15, 2011.

In 2010 and 2011 Defendant Phillip Taillon was president of the board of directors of UNI as well as executive director of the Department of Planning and Development for the City of Hammond. On February 16, 2011, Taillon and two other members of the UNI board met with Plaintiff and told her it was a conflict of interest for her to run for city council and that, if she didn't remove herself from the race, she would be terminated as executive director of UNI.

3

Taillon called a special meeting of the board of directors of UNI that was held on March 11, 2011. Contrary to the usual practice, the meeting was not recorded and Plaintiff was excluded from it. At the meeting, UNI's board of directors voted to terminate Plaintiff's employment.

UNI receives substantial funding from the Department of Planning and Development and from McDermott's discretionary gaming fund. Its board of directors is composed of one-third government, one-third business, and one-third low income members. The government and business members are often recommended by McDermott and his recommendations have always been accepted and approved by UNI. He claims credit for creating UNI and getting people jobs there.

Plaintiff alleges that McDermott, acting under color of law as the mayor of Hammond, conspired with the other defendants in this case to get her fired to retaliate against her for exercising her constitutionally protected right to freedom of political speech and action, as protected by the First Amendment. She further alleges that he had final policymaking authority for the city and that he acted in accordance with a "policy, custom, or pattern in engaging in and condoning retaliation against individuals based on their political affiliation or when they run against one of the Mayor's supported candidates for political office." DE 34 at 20.


**C.     Discussion**

**(1)     *Sufficiency of the Complaint***

McDermott first asserts that Plaintiff's complaint should be dismissed against him individually because it does not make clear if he is being sued in his individual capacity, doesn't

differentiate between what he did individually and in his official capacity, and lacks language to show that he had any knowledge of the alleged conspiracy to get Plaintiff fired from UNI or any direct involvement in it.

Plaintiff's complaint plainly indicates that McDermott is being sued both individually and in his official capacity. The caption states that he is being sued individually. The first sentence of the complaint recites that the complaint is against McDermott in his individual and official capacity as the mayor of Hammond. A similar statement appears in paragraph twelve of the complaint. Moreover, the Court understands the allegations against McDermott to relate both to individual capacity liability and official capacity liability. After all, a § 1983 claim against him in his official capacity is tantamount to a claim against the city of Hammond. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Municipal liability may be based on a widespread practice or the decision of a person with final policymaking authority. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123–127 (1988). If McDermott's individual actions were pursuant to a widespread municipal practice or were the actions of a person with final policymaking authority, both of which were alleged in the complaint, then his individual actions can be the basis for municipal liability. There is no need to differentiate between individual and official actions: the same conduct may support both individual and municipal liability.

With regard to McDermott's claim that the complaint lacks sufficient detail to state a claim against him personally, the Court disagrees. Generally, to state a § 1983 conspiracy claim, a plaintiff must allege that: "(1) a state official and private individual(s) reached an understanding to deprive the plaintiff of his constitutional rights; and (2) those private individual(s) were willful participant[s] in joint activity with the State or its agents." *Reynolds v.*

*Jamison,* 488 F.3d 756, 764 (7th Cir. 2007). A plaintiff must allege "the parties, the general

purpose, and the approximate date of the conspiracy." *Loubser v. Thacker,* 440 F.3d 439, 442

(7th Cir. 2006). A plaintiff must also indicate the nature of the alleged conspiratorial agreement.

*Walker v. Thompson,* 288 F.3d 1005, 1007–08 (7th Cir. 2002). Plaintiff's complaint meets all

these requirements.

Plaintiff's complaint alleges enough facts to make out a plausible claim that McDermott

was part of a conspiracy to terminate her on account of her political activity. The fact that

McDermott made known his displeasure with Plaintiff at a meeting of his political supporters, as

well as the allegations of close political ties among the Defendants and the timing of Plaintiff's

termination, provide a basis for inferring at least a tacit agreement among them to take away her

position as executive director of UNI because of her political opposition to McDermott and

Higgs.

**(2)      *Qualified Immunity***

McDermott argues that he is entitled to qualified immunity because Plaintiff cannot

establish that he violated a clearly established constitutional right in the context of this case. The

Court disagrees. Qualified immunity protects government officials from liability insofar as their

conduct does not violate clearly established constitutional rights of which a reasonable person

would have known. *Pearson v. Callahan*, 555 U.S. 223, 230 (2009). Qualified immunity

balances the need to hold public officials accountable when they exercise power irresponsibly

against the need to protect them when they perform their duties reasonably. *Id.* The qualified

immunity analysis involves an inquiry into whether the defendant's conduct violated a

constitutional right and whether the particular constitutional right was clearly established at the time of the alleged violation. *Volkman v. Ryker*, 736 F.3d 1084, 1090 (7th Cir. 2013). For qualified immunity to be surrendered, preexisting law must compel the conclusion that the conduct complained of violates federal law in the circumstances. *Id.* Accepting as true Plaintiff's allegations that McDermott conspired and agreed with UNI and others to punish her for running against his candidate for city council by having her terminated as executive director of UNI, as the Court must on a motion to dismiss, such conduct constitutes the violation of First Amendment rights that were clearly established at the time of violation in 2011.

A person's interest in running for office and thereby expressing her political views without interference from government officials who wish to discourage the expression of those views lies at the core of the values protected by the First Amendment. *Newcomb v. Brennan*, 558 F.2d 825, 829 (7th Cir. 1977). Additionally, retaliation by public officials against the exercise of First Amendment rights is itself a violation of the First Amendment. *Frat. Order of Police Hobart Lodge No. 121, Inc. v. City of Hobart*, 864 F.2d 551, 553 (7th Cir. 1988). Furthermore, it is well established that a state actor may be liable along with a private entity when the state actor acts in concert with the private entity to deprive a person of her federal constitutional rights. *Hudson v. Chi. Teachers Union Local No. 1*, 743 F2d 1187, 1191 (7th Cir. 1984). Thus, a reasonable public official would know that procuring Plaintiff's discharge from UNI in retaliation for her running for office against his political ally violated her First Amendment rights. Accordingly, McDermott is not entitled to qualified immunity.

**(3)     Other Claims**

While McDermott's motion to dismiss requests that the entire complaint against him be

dismissed, he makes no specific arguments directed at Plaintiff's claims in Counts VII and VIII.

Accordingly, these Counts will not be dismissed.


**D.     Conclusion**

For the foregoing reasons, Defendant Thomas McDermott Jr.'s motion to dismiss

Plaintiff's second amended complaint (DE 35) is DENIED.

SO ORDERED on September 23, 2014.

> s/ Joseph S. Van Bokkelen
> Joseph S. Van Bokkelen
> United States District Judge