United States District Court
Northern District of Indiana
Hammond Division

CARLOTTA BLAKE-KING,           )
                               )
            Plaintiff,         )
                               )
      v.                       )         Civil Action No. 2:13-CV-91 JVB
                               )
THOMAS M. MCDERMOTT, JR.,      )
individually and as the Mayor of City of )
Hammond, et al.                )
                               )
            Defendants.        )

**OPINION AND ORDER**

Plaintiff Carlotta Blake-King has sued Defendant Anthony Higgs, a member of the Hammond city council, and five other defendants, alleging in her second amended complaint ("complaint") that they were members of a conspiracy to terminate her position as executive director of United Neighborhoods Inc. ("UNI"), an Indiana not-for-profit corporation, because of her exercise of her First Amendment rights, in violation of 42 U.S.C. § 1983. She also alleges two state law claims against Higgs (and four of the other defendants) for tortious interference with a contractual relationship and tortious interference with a business relationship. Higgs has filed a motion to dismiss the claims against him pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim (DE 39).

**A.      Standard for Evaluating a Motion to Dismiss**

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim is to test the sufficiency of the pleadings, not to decide the merits of the case. *See Gibson v.*

*Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). Rule 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." However, "recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007)).[1] As the Supreme Court has stated, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* Rather, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570). A complaint is facially plausible if a court can reasonably infer from factual content in the pleading that the defendant is liable for the alleged wrongdoing. *Id.* (citing *Twombly*, 550 U.S. at 556). The Seventh Circuit has synthesized the standard into three requirements. *See Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). "First, a plaintiff must provide notice to defendants of her claims. Second, courts must accept a plaintiff's factual allegations as true, but some factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim. Third, in considering the plaintiff's factual allegations, courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id.*

**B.     Facts**

According to Plaintiff's complaint, she was hired as executive director of UNI in February 2005. Defendant McDermott told her about the position and recommended her to

---

[1] In *Twombly*, the Supreme Court "retooled federal pleading standards, retiring the oft-quoted [*Conley v. Gibson*, 355 U.S. 42, 47 (1957)] formulation that a pleading 'should not be dismissed for failure to state a claim unless it appears beyond doubt that the [pleader] can prove no set of facts in support of his claim which would entitle him to relief.'" *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

UNI's board of Directors. In October 2010, she announced her candidacy for the Hammond Third District city council seat against the incumbent, Defendant Anthony Higgs. McDermott was angry with her because he was supporting Higgs and also wanted her help with his mayoral reelection campaign. In February 2011, McDermott held a campaign meeting with most of the city departments heads and party captains. At the meeting, McDermott stated that he had gotten Plaintiff her job at UNI and that by running for city council she would not be able to adequately help and support his campaign. He announced he was upset with her and didn't care who knew it.

At a city council meeting on February 14, 2011, Higgs moved for a letter to be sent to UNI questioning the legality of Plaintiff running for public office while serving as the director of a not for profit agency. Higgs sent a letter to Plaintiff and various members of UNI's board of directors dated February 15, 2011.

In 2010 and 2011 Defendant Phillip Taillon was president of the board of directors of UNI as well as executive director of the Department of Planning and Development for the City of Hammond. On February 16, 2011, Taillon and two other members of the UNI board met with Plaintiff and told her it was a conflict of interest for her to run for city council and that if she didn't remove herself from the race, she would be terminated as executive director of UNI.

Taillon called a special meeting of the board of directors of UNI that was held on March 11, 2011. Contrary to the usual practice, the meeting was not recorded and Plaintiff was excluded from it. At the meeting, UNI's board of directors voted to terminate Plaintiff's employment.

UNI receives substantial funding from the Department of Planning and Development and from McDermott's discretionary gaming fund. Its board of directors is composed of one-third

government, one-third business, and one-third low income members. The government and business members are often recommended by McDermott and his recommendations have always been accepted and approved by UNI. He claims credit for creating UNI and getting people jobs there.

Plaintiff alleges that Higgs, acting under color of law as a member of the Hammond city council, conspired with the other defendants in this case to get Plaintiff fired to retaliate against her for exercising her constitutionally protected right to freedom of political speech and action, as protected by the First Amendment and that he tortiously interfered with her contractual and business relationships with UNI.

C.  Discussion

Higgs argues that he is entitled to absolute legislative immunity because the only specific allegation against him is that he moved for the city council to send a letter inquiring whether UNI was complying with federal law by allowing Plaintiff to serve as executive director of UNI while running for office, an act he claims is incidental to the city council's authority to control the city's finances. The Court agrees that Higgs is entitled to legislative immunity with regard to Plaintiff's § 1983 claim against him.[2]

As alleged in the Complaint, UNI received substantial funding from the city of Hammond. Whether it was legal for Plaintiff to run for political office while working for an organization that relied heavily on funding from the city could have a bearing on whether the Hammond city council continued to appropriate funds for that organization. Investigation of

---

[2]Although Higgs does not limit his legislative immunity argument to his § 1983 claim, he has discussed and argued only federal law. However, state rules of immunity apply in federal court with respect to state causes of action. *Benning v. Board of Regents of Regency Universities*, 928 F.2d 775, 779 (7th Cir. 1991).

such matters is a legislative function.

In *Tenney v. Brandhove*, 341 U.S. 367, 377-78 (1951) the Supreme Court applied the doctrine of absolute legislative immunity to a § 1983 action concerning an investigation conducted by the California state legislature:[3]

> Investigations . . . are an established part of representative government. In times of political passion, dishonest or vindictive motives are readily attributed to legislative conduct and as readily believed. Courts are not the place for such controversies. Self-discipline and the voters must be the ultimate reliance for discouraging or correcting such abuses. The courts should not go beyond the narrow confines of determining that a [legislative] committee's inquiry may fairly be deemed within its province.

[Footnotes omitted.]

Even if Higgs's motive in making his inquiry was to influence UNI to discharge Plaintiff to punish her for running against him, he is still entitled to legislative immunity with regard to her § 1983 claim: "The claim of an unworthy purpose does not destroy the privilege. Legislators are immune from deterrents to the uninhibited discharge of their legislative duty . . ." *Id.* at 377. Accordingly, Higgs is entitled to legislative immunity on Plaintiff's § 1983 claim against him.

While Higgs's motion to dismiss requests that the entire complaint against him be dismissed, he makes no specific arguments directed at Plaintiff's state law claims in Counts VII and VIII for tortious interference with Plaintiff's contractual and business relationships with UNI. Accordingly, these Counts will not be dismissed.

**D.    Conclusion**

---

[3]The case actual involved a previous codification of § 1983.

For the foregoing reasons, Defendant Anthony Higgs's motion to dismiss for failure to state a claim (DE 39) is GRANTED with respect to Count I of Plaintiff's complaint, which the Court dismisses with prejudice. The Court DENIES Higgs's motion with respect to Counts VII and VIII.

SO ORDERED on September 23, 2014.

s/ Joseph S. Van Bokkelen  
Joseph S. Van Bokkelen  
United States District Judge