# United States District Court
# Northern District of Indiana
# Hammond Division

| | |
|---|---|
| CARLOTTA BLAKE-KING, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>THOMAS M. MCDERMOTT, JR., )<br>individually and as the Mayor of City of )<br>Hammond, et al. )<br>)<br>Defendants. ) | Civil Action No. 2:13-CV-91 JVB |

## OPINION AND ORDER

Plaintiff Carlotta Blake-King has sued Defendants Nicole Bennett and the law firm of Tauber, Westland, and Bennett P.C. ("TWB"), along with four other defendants, alleging in her second amended complaint ("complaint") that they were members of a conspiracy to terminate her position as executive director of United Neighborhoods Inc. ("UNI"), an Indiana not-for-profit corporation, because of her exercise of her First Amendment rights, in violation of 42 U.S.C. § 1983. She also alleges state law claims against Bennett and TWB (and two other defendants) for violation of the Indiana Open Door Law. Finally, she asserts claims against Bennett and Tauber (and three other defendants) for tortious interference with a contractual relationship and tortious interference with a business relationship. Bennett and TWB have moved to dismiss all Plaintiff's claims against them (DE 43).

**A.     Standard for Evaluating a Motion to Dismiss**

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim

is to test the sufficiency of the pleadings, not to decide the merits of the case. *See Gibson v. Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). Rule 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." However, "recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007)).[1] As the Supreme Court has stated, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* Rather, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570). A complaint is facially plausible if a court can reasonably infer from factual content in the pleading that the defendant is liable for the alleged wrongdoing. *Id.* (citing *Twombly*, 550 U.S. at 556). The Seventh Circuit has synthesized the standard into three requirements. *See Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). "First, a plaintiff must provide notice to defendants of her claims. Second, courts must accept a plaintiff's factual allegations as true, but some factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim. Third, in considering the plaintiff's factual allegations, courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id.*

**B.    Background**

---

[1] In *Twombly*, the Supreme Court "retooled federal pleading standards, retiring the oft-quoted [*Conley v. Gibson*, 355 U.S. 42, 47 (1957)] formulation that a pleading 'should not be dismissed for failure to state a claim unless it appears beyond doubt that the [pleader] can prove no set of facts in support of his claim which would entitle him to relief.'" *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

According to Plaintiff's complaint, She was hired as executive director of UNI in February 2005.  Defendant McDermott, the mayor of the City of Hammond, told her about the position and recommended her to UNI's board of Directors.  In October 2010, she announced her candidacy for the Hammond Third District city council seat against the incumbent, Defendant Anthony Higgs.  McDermott was angry with her because he was supporting Higgs and also wanted Plaintiff's help with his mayoral reelection campaign.  In February 2011, McDermott held a campaign meeting with most of the city departments heads and party captains.  At the meeting, McDermott stated that he had gotten Plaintiff her job at UNI and that by running for city council she would not be able to adequately help and support his campaign.  He announced he was upset with her and didn't care who knew it. Taillon was also upset with Plaintiff for running against McDermott's candidate.

At a city council meeting on February 14, 2011, Higgs moved for a letter to be sent to UNI questioning the legality of Plaintiff running for public office while serving as the director of a not for profit agency.  Higgs sent a letter to Plaintiff and various members of UNI's board of directors dated February 15, 2011.

In 2010 and 2011 Defendant Phillip Taillon was president of the board of directors of UNI as well as executive director of the Department of Planning and Development for the City of Hammond.  On February 16, 2011, Taillon and two other members of the UNI board met with Plaintiff and told her it was a conflict of interest for her to run for city council and that if she didn't remove herself from the race, she would be terminated as executive director of UNI.

Bennett is a lawyer and a shareholder in TWB.  According to the complaint, she served as legal counsel to UNI, having been referred to UNI by McDermott. TWB is also retained by

various City of Hammond agencies, including the Department of Planning and Development, of which Taillon is president, giving Bennett and TWB financial incentive to conspire with the other defendants to terminate Plaintiff.  Bennett and TWB knew McDermott was upset that Plaintiff was running against Higgs.

Taillon called a special meeting of the board of directors of UNI that was held on March 11, 2011.  Contrary to the usual practice, the meeting was not recorded and Plaintiff was excluded from it.  At the meeting, Bennett advised UNI that Plaintiff's decision to run for public office violated the Hatch Act. Plaintiff alleges that Bennett used the Hatch Act, which Plaintiff contends clearly does not apply to private organizations, to intentionally mislead UNI into terminating her because of her decision to run for city council against Higgs. UNI's board of directors voted to terminate Plaintiff's employment.

UNI receives substantial funding from the Department of Planning and Development and from McDermott's discretionary gaming fund.  Its board of directors is composed of one-third government, one-third business, and one-third low income members.  The government and business members are often recommended by McDermott and his recommendations have always been accepted and approved by UNI.  He claims credit for creating UNI and getting people jobs there.

In Count I of the Complaint Plaintiff alleges that Bennett and TWB conspired with the other defendants in this case to get Plaintiff fired in retaliation against her for exercising her First Amendment right to freedom of political speech and action.  In Count III she claims they and other Defendants violated various provisions of the Indiana Open Door Law with respect to the March 11, 2011, UNI board meeting at which the decision to terminate her was made. In Count

4

VII Plaintiff alleges Bennett and TWB, together with other Defendants, induced UNI to terminate her by providing false information about her that led to her termination and that Bennett and TWB knowingly "read an incorrect statute" at the meeting that culminated in her termination. (Compl., DE 34, ¶ 156). In Count VIII she alleges Bennett, TWB, and other Defendants interfered with her business relationship with UNI.

**C.     Discussion**

**(1)    *§ 1983***

Bennett and TWB contend Plaintiff's complaint does not contain allegations to show that her § 1983 claim applies to private actors like them. While they concede that private actors can be liable under § 1983 if they conspire with state actors to deprive a plaintiff of her constitutional rights, they maintain that Plaintiff has not adequately pleaded a conspiracy. The Court disagrees. Generally, to state a § 1983 conspiracy claim, a plaintiff must allege that: "(1) a state official and private individual(s) reached an understanding to deprive the plaintiff of his constitutional rights; and (2) those private individual(s) were willful participant[s] in joint activity with the State or its agents." *Reynolds v. Jamison,* 488 F.3d 756, 764 (7th Cir. 2007). A plaintiff must allege "the parties, the general purpose, and the approximate date of the conspiracy." *Loubser v. Thacker,* 440 F.3d 439, 442 (7th Cir. 2006). A plaintiff must also indicate the nature of the alleged conspiratorial agreement. *Walker v. Thompson,* 288 F.3d 1005, 1007–08 (7th Cir. 2002). Plaintiff's complaint meets all these requirements.

Plaintiff's complaint alleges enough facts to make out a plausible claim that Bennett was part of a conspiracy to terminate her on account of her political activity. The fact that

5

McDermott made known his displeasure with Plaintiff at a meeting of his political supporters, as well as the allegations of close political ties among the Defendants and the timing of Plaintiff's termination, provide a basis for inferring at least a tacit agreement among them to take away her position as executive director of UNI because of her political opposition to McDermott and Higgs.

**(2)** *Open Door Law*

Bennett and TWB argue that Plaintiff's claims against them in Count III for violations of the Indiana Open Door Law ("ODL") must be dismissed as time-barred. In her response brief Plaintiff withdraws her requests for all but a declaratory judgment under the ODL and maintains that its thirty-day statute of limitations does not apply to the relief she seeks.

Indiana Code § 5-14-1.5-7(a) provides that any person may file an action to (1) obtain a declaratory judgment, (2) enjoin violations of the ODL, or (3) declare void any policy, decision, or final action taken in violation of the ODL. Section 5-14-1.5-7(b) provides that any action to declare void any policy, decision, or final action void or to enter an injunction that would invalidate any policy, decision, or final action on the basis of violations of the ODL must be commenced within thirty days of the date of the act complained of or within thirty days of the date the plaintiff knew or should have known that the act complained of had occurred. The Court agrees with Plaintiff that to the extent she requests a declaratory judgment that does not seek to void the decision to terminate her, the thirty-day statute of limitations does not apply. Nonetheless, the Court will dismiss the ODL claim against Bennett and TWB. The Court finds no indication in the ODL that the attorney who represents an organization subject to the ODL, or

her law firm, is a proper party to an action to declare that the ODL has been violated.

**(3)** *Tortious Interference with a Contractual Relationship*

Bennett and TWB seek dismissal of Count VII of Plaintiff's complaint against them because they insist that a claim for tortious interference with a contractual relationship must include an allegation not only that they encouraged UNI to terminate Plaintiff's contract, but also that they sought to obtain the benefit of that contract for themselves. However, the Indiana Supreme Court has not included such a requirement in its enumeration of the elements of this tort. According to that court, the elements of tortious interference with a contractual relationship are: (1) the existence of a valid and enforceable contract; (2) the defendant's knowledge of the existence of the contract; (3) the defendant's intentional inducement of breach of the contract; (4) the absence of justification; and (5) damages resulting from the defendant's wrongful inducement of the breach. *Winkler v. V.G. Reed & Sons, Inc.*, 638 N.E.2d 1228, 1235 (Ind. 1994).

Bennett and TWB further argue that because Bennett was UNI's attorney she was its agent and that somehow, for that reason, Plaintiff's contract with UNI was also Bennett and TWB's contract. They argue that, because a defendant's breach of its own contract with a plaintiff is not actionable as tortious interference with a contractual relationship, Plaintiff's complaint fails to state a claim against them. The case they cite for this proposition, *Kiyose v. Trustees of Indiana University*, 333 N.E.2d 886, 891 (Ind. App. 1975), does not support its application in this case. There the plaintiff sued the trustees for failing to reappoint him to a faculty position, an expectation the trustees allegedly created through prior representations and

assurances. The court held that because the non-reappointment of faculty members was within their official duties, they could not be liable for interfering with the plaintiff's prospective advantage, which the court analogized to the tort of interference with contractual relations. *Id.* In *Kiyose*, the defendants were the creators of the relationship they allegedly interfered with—parties to the relationship—and could not be liable for tortious interference with that relationship. However, in the instant case, because Bennett and TWB cannot be considered parties to Plaintiff's employment contract with UNI, they are capable of tortiously interfering with the contract. Accordingly, the Court will not dismiss Count VII as to Bennett and TWB.

**(4)**  *Tortious Interference with a Business Relationship*

Bennett and TWB argue that Count VIII of Plaintiff's complaint fails to state a claim against them because it fails to allege any illegal conduct on their part, an essential element of this tort. Indiana state courts have provided little guidance on what constitutes illegal conduct as it relates to establishing tortious interference with a business relationship. In *Reginald Martin Agency v. Conseco Medical Insurance Company*, 388 F. Supp. 2d 919, 931–32 (S.D. Ind. 2005), the court collects cases in which federal courts deciding Indiana law found a wide variety of non-criminal illegal acts sufficient to establish a tortious interference with a business relationship claim, including violation of the Federal Trademark Dilution Act, the False Claims Act, and 42 U.S.C. § 1981; and invasion of privacy and sexual harassment. However none of these cases persuade the Court that any of the conduct of Bennett and TWB alleged in the Complaint satisfies the illegal conduct element of tortious interference with a business relationship. Moreover, Plaintiff has not directed the Court to any case with facts even remotely resembling

the facts of this case wherein a court found illegality sufficiently alleged. Accordingly, the Court will dismiss Count VIII as to Bennett and TWB.

**D.**     **Conclusion**

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART the motion of Defendants Nicole Bennett and Tauber, Westland & Bennett P.C. to dismiss Plaintiff's complaint against them (DE 43). The Court GRANTS the motion with respect to Counts III and VIII of the complaint and DENIES it with respect to all other counts.

SO ORDERED on September 23, 2014.

 s/ Joseph S. Van Bokkelen  
Joseph S. Van Bokkelen  
United States District Judge