# United States District Court
# Northern District of Indiana
# Hammond Division

| | |
|---|---|
| CARLOTTA BLAKE-KING, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 2:13-CV-91  JVB |
| ) | |
| THOMAS M. MCDERMOTT, JR., ) | |
| individually and as the Mayor of City of ) | |
| Hammond, et al. ) | |
| ) | |
| Defendants. ) | |

**OPINION AND ORDER**

Plaintiff Carlotta Blake-King has sued Defendant Phillip Taillon, individually and as the president of the board of directors of Defendant United Neighborhoods Inc. ("UNI") and executive director of planning and development for the city of Hammond, along with five other defendants. She alleges in her second amended complaint ("complaint") that they were members of a conspiracy to terminate her position as executive director of UNI, an Indiana not-for-profit corporation, because of her exercise of her First Amendment rights in violation of 42 U.S.C. § 1983. She also alleges state law claims against Taillon for violation of Indiana's Open Door Law, breach of contract, defamation, tortious interference with a contractual relationship and tortious interference with a business relationship.[1] Taillon has filed a motion to dismiss the claims against him pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim (DE 41).

---

[1]In Count VI of the Complaint Plaintiff also alleges a claim against Taillon for breach of the duty of good faith and fair dealing, but states in her brief in response to Taillon's motion to dismiss that she voluntarily dismisses that count.

A.      **Standard for Evaluating a Motion to Dismiss**

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim is to test the sufficiency of the pleadings, not to decide the merits of the case. *See Gibson v. Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). Rule 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." However, "recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007)).[2] As the Supreme Court has stated, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* Rather, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570). A complaint is facially plausible if a court can reasonably infer from factual content in the pleading that the defendant is liable for the alleged wrongdoing. *Id.* (citing *Twombly*, 550 U.S. at 556). The Seventh Circuit has synthesized the standard into three requirements. *See Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). "First, a plaintiff must provide notice to defendants of her claims. Second, courts must accept a plaintiff's factual allegations as true, but some factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim. Third, in considering the plaintiff's factual allegations, courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal

---

[2]In *Twombly*, the Supreme Court "retooled federal pleading standards, retiring the oft-quoted [*Conley v. Gibson*, 355 U.S. 42, 47 (1957)] formulation that a pleading 'should not be dismissed for failure to state a claim unless it appears beyond doubt that the [pleader] can prove no set of facts in support of his claim which would entitle him to relief.'" *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

statements." *Id.*

**B. Background**

According to Plaintiff's complaint, she was hired as executive director of UNI in February 2005. Defendant McDermott told her about the position and recommended her to UNI's board of Directors. In October 2010, she announced her candidacy for the Hammond Third District city council seat against the incumbent, Defendant Anthony Higgs. McDermott was angry with her because he was supporting Higgs and also wanted Plaintiff's help with his mayoral reelection campaign. In February 2011, McDermott held a campaign meeting with most of the city departments heads and party captains. At the meeting, McDermott stated that he had gotten Plaintiff her job at UNI and that by running for city council she would not be able to adequately help and support his campaign. He announced he was upset with her and didn't care who knew it. Taillon was also upset with Plaintiff for running against McDermott's candidate.

At a city council meeting on February 14, 2011, Higgs moved for a letter to be sent to UNI questioning the legality of Plaintiff running for public office while serving as the director of a not for profit agency. Higgs sent a letter to Plaintiff and various members of UNI's board of directors dated February 15, 2011.

In 2010 and 2011 Defendant Phillip Taillon was president of the board of directors of UNI as well as executive director of the Department of Planning and Development for the City of Hammond. On February 16, 2011, Taillon and two other members of the UNI board met with Plaintiff and told her it was a conflict of interest for her to run for city council and that if she didn't remove herself from the race, she would be terminated as executive director of UNI.

3

Taillon called a special meeting of the board of directors of UNI that was held on March 11, 2011. Contrary to the usual practice, the meeting was not recorded and Plaintiff was excluded from it. At the meeting, UNI's board of directors voted to terminate Plaintiff's employment.

UNI receives substantial funding from the Department of Planning and Development and from McDermott's discretionary gaming fund. Its board of directors is composed of one-third government, one-third business, and one-third low income members. The government and business members are often recommended by McDermott and his recommendations have always been accepted and approved by UNI. He claims credit for creating UNI and getting people jobs there.

In Count I of the Complaint Plaintiff alleges that Taillon conspired with the other defendants in this case to get Plaintiff fired in retaliation against her for exercising her First Amendment right to freedom of political speech and action. In Count III she claims Taillon and other Defendants violated various provisions of the Indiana Open Door Law with respect to the March 11, 2011, UNI board meeting at which the decision to terminate her was made. In Count IV she alleges a breach of contract claim against Taillon and UNI based on UNI bylaw provisions regarding the requirements for notice for board meetings and minute-taking. In Count V she alleges Taillon defamed her at the March 11 meeting by falsely attacking her character, integrity, and work performance. In Count VII Plaintiff alleges Taillon and other Defendants induced UNI to terminate her by providing false information about her that led to her termination. In Count VIII she alleges Taillon and other Defendants interfered with her business relationship with UNI.

**C.     Discussion**

**(1)     *Open Door Law***

Taillon argues that Plaintiff's claims for violations of the Indiana Open Door Law ("ODL") must be dismissed as time-barred. In her response brief Plaintiff withdraws her requests for all but a declaratory judgment under the ODL and maintains that its thirty-day statute of limitations does not apply to the relief she seeks. Indiana Code § 5-14-1.5-7(a) provides that any person may file an action to (1) obtain a declaratory judgment, (2) enjoin violations of the ODL, or (3) declare void any policy, decision, or final action taken in violation of the ODL. Section 5-14-1.5-7(b) provides that any action to declare void any policy, decision, or final action void or to enter an injunction that would invalidate any policy, decision, or final action on the basis of violations of the ODL must be commenced within thirty days of the date of the act complained of or within thirty days of the date the plaintiff knew or should have known that the act complained of had occurred. The Court agrees with Plaintiff that to the extent she requests a declaratory judgment that does not seek to void the decision to terminate her, the thirty-day statute of limitations does not apply. Accordingly, the Court will not dismiss Count III against Taillon.

**(2)     *Breach of Contract***

Plaintiff maintains the bylaws of UNI constitute a contract to which she and Taillon were parties and that UNI and Taillon breached the contract by failing to provide two days notice that announced the purpose of the March 11 special meeting and not preparing minutes of the meeting. However, she has failed to direct the Court to any authority that convinces it that the

5

bylaws afforded her any contract rights or that Taillon was a party to such a contract. Accordingly, Count IV will be dismissed as to Taillon.

**(3)** *Defamation*

In Count V of the Complaint Plaintiff asserts a claim for defamation against Taillon. The elements of defamation under Indiana law are: (1) a communication with defamatory imputation, (2) malice, (3) publication, and (4) damages. *Lovings v. Thomas*, 805 N.E.2d 442, 447 (Ind. Ct. App. 2004). Defamation is "that which tends to injure reputation or to diminish esteem, respect, good will, or confidence in the plaintiff, or to excite derogatory feelings or opinions about the plaintiff." *Ratcliff v. Barnes*, 750 N.E.2d 433, 436 (Ind. Ct. App. 2001). Plaintiff bases her defamation claim on the allegations that Taillon "spent the better part of two hours at the Special Meeting berating [her] character and work performance" (Complaint, DE 34, para. 137) and that his statements were false. These allegations amount to no more than a contention that Taillon lied about Plaintiff, without stating what the lies were. This is not enough to state a plausible claim for defamation. *See Lucien v. Preiner*, 967 F.2d 1166, 1168 (7th Cir. 1992) (concluding that the plaintiff's failure to allege anything more than that the defendant lied in a letter to a third party, without stating what those lies were, was not enough to state a claim.) Accordingly, Count V of Plaintiff's Complaint against Taillon will be dismissed.

**(4) Tortious Interference with a Contractual Relationship and Tortious Interference with a Business Relationship**

Court VII of the Complaint alleges that Taillon tortiously interfered with Plaintiff's

<mark>6</mark>

contractual relationship with UNI. In Count VIII she claims he tortiously interfered with her business relationship with UNI. As alleged in the Complaint he was, at all relevant times, the president of the board of directors of UNI. Taillon maintains that as president of the board, he could not have committed the tort of interference with a contractual or business relationship. The Court agrees. As the Indiana Supreme Court stated:

> A party cannot "interfere" with its own contracts, so the tort itself can be committed only by a third party. In the case of a corporation, the legal entity acts through its directors and officers. Thus, when officers or directors act in their official capacity as agents of the corporation, they act not as individuals but as the corporation itself. In doing so, they are not acting as a third party, but rather as a party to the contract and cannot be personally liable for tortious interference with the contract.

*Trail v. Boys and Girls Clubs of Nw. Ind.*, 845 N.E.2d 130, 138 (Ind. 2006)(citations omitted). This reasoning applies equally to interference with a business relationship. Moreover, Plaintiff has alleged no facts to suggest Taillon was acting outside his official corporate capacity at the board of directors meeting that resulted in her termination. As the Court in *Trail* went on to say:

> Because the officers and directors of corporations possess some immunity from claims of tortious interference, to state a claim against the officers and directors of a corporation, [a plaintiff] . . . must allege some interfering act by officers or directors that rests outside their authority as agents of the corporation.

*Id.* at 139. For these reasons, Counts VII and VIII will be dismissed as to Taillon.


**(5)** *§ 1983 Claim*

Plaintiff's complaint alleges enough facts to make out a plausible claim that Taillon was part of a conspiracy to terminate her employment with UNI on account of her political activity. The fact that McDermott made known his displeasure with Plaintiff at a meeting of his political supporters, as well as the allegations of close political ties among the Defendants and the timing

7

of Plaintiff's termination, provide a basis for inferring at least a tacit agreement among them to take away her position as executive director of UNI because of her political opposition to McDermott and Higgs.

Taillon argues that he is entitled to qualified immunity but this claim also fails. Qualified immunity protects government officials from liability insofar as their conduct does not violate clearly established constitutional rights of which a reasonable person would have known. *Pearson v. Callahan*, 555 U.S. 223, 230 (2009). Qualified immunity balances the need to hold public officials accountable when they exercise power irresponsibly against the need to protect them when they perform their duties reasonably. *Id.* The qualified immunity analysis involves an inquiry into whether the defendant's conduct violated a constitutional right and whether the particular constitutional right was clearly established at the time of the alleged violation. *Volkman v. Ryker*, 736 F.3d 1084, 1090 (7th Cir. 2013). For qualified immunity to be surrendered, preexisting law must compel the conclusion that the conduct complained of violates federal law in the circumstances. *Id.* Accepting as true Plaintiff's allegations that Taillon conspired and agreed with McDermott, Higgs, and others to punish her for running against McDermott's candidate for city council by having her terminated as executive director of UNI, as the Court must on a motion to dismiss, the Court finds such conduct constitutes the violation of First Amendment rights that were clearly established at the time of violation in 2011.

A person's interest in running for office and thereby expressing her political views without interference from government officials who wish to discourage the expression of those views lies at the core of the values protected by the First Amendment. *Newcomb v. Brennan*, 558 F.2d 825, 829 (7th Cir. 1977). Additionally, retaliation by public officials against the

exercise of First Amendment rights is itself a violation of the First Amendment. *Frat. Order of Police Hobart Lodge No. 121, Inc. v. City of Hobart*, 864 F.2d 551, 553 (7th Cir. 1988). Furthermore, it is well established that a state actor may be liable along with private actors when the state actor acts in concert with the private actors to deprive a person of her federal constitutional rights. *Hudson v. Chi. Teachers Union Local No. 1*, 743 F2d 1187, 1191 (7th Cir. 1984). Thus, a reasonable public official would know that conspiring to procure Plaintiff's discharge from UNI in retaliation for her running for office against McDermott's wishes violated her First Amendment rights. Accordingly, to the extent Taillon is sued in his individual capacity as a state actor, he is not entitled to qualified immunity.[3]

Moreover, Taillon has not directed the Court to any authority that would extend qualified immunity to him to the extent that, as chairman of the board of UNI, he is being sued as a private party who jointly participated with government officials to interfere with Plaintiff's First Amendment rights. *Wyatt v. Cole*, 504 U.S. 158, 168 (1992) suggests that the doctrine does not apply in such cases: "[T]he nexus between private parties and the historic purposes of qualified immunity is simply too attenuated to justify such an extension of our doctrine of qualified immunity."

**(6)  Breach of Good Faith and Fair Dealing**

Plaintiff has stated in her response to Taillon's motion that she voluntarily dismisses

---

[3]Nor is Taillon entitled to qualified immunity in his official capacity as the executive director of planning and development for the City of Hammond. A § 1983 claim against a municipal official in his official capacity is tantamount to a suit against the municipal entity. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Municipalities, unlike government officials, are not entitled to qualified immunity in § 1983 litigation. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 166 (1993).

Count VI of her complaint for breach of good faith and fair dealing against Taillon. Accordingly, this claim will be dismissed.

**D.     Conclusion**

For the foregoing reasons, Defendant Phillip Taillon's motion to dismiss (DE 41) is GRANTED in part and DENIED in part. It is granted with respect to Counts IV, V, VI, VII, and VIII. It is DENIED with respect to the remaining Counts alleging claims against Taillon.

SO ORDERED on September 23, 2014.

 s/ Joseph S. Van Bokkelen
Joseph S. Van Bokkelen
United States District Judge